BARRY, Judge.
A compensation claimant seeking total and permanent benefits appeals an award granting only 11 additional days.
On July 16, 1982, shortly after 24 year old Vickie Crisp was employed by Southern Silk Screen, Inc. as a printer, she injured her back. The defendant insurer discontinued compensation on September 2, 1982. The trial judge awarded additional compensation through September 13, 1982 plus penalties and $350.00 attorney’s fees.
Plaintiff contends the trial judge erred by not giving greater weight to her treating physicians’ testimony over defendants’ doctors. She asserts her testimony was uncontradicted and all of the evidence established her total and permanent disability under the odd-lot classification. Lattin v. HICA Corp., 395 So.2d 690 (La.1981).
Immediately after the accident plaintiff was taken to Mercy Hospital and x-rayed, examined, given a shot, 2 prescriptions, and released. Five days later Dr. W.F. Ploger, an orthopedic surgeon, examined her at the request of the employer. She complained of back pain which worsened upon sitting and standing and was given a prescription for pain. Dr. Ploger had no positive or objective findings and felt her symptoms were relatively mild and she could resume work within 5 days.
One week post-accident plaintiff consulted Dr. Nick Accardo, orthopedist, who saw her three additional times over the next four weeks. On the initial examination Dr. Accardo noted loss of motion in all directions. There was objective evidence of moderate paravertibral muscle spasm in the lumbar area. The straight leg raising tests were positive and the lumbar curvature was not normal. Dr. Accardo diagnosed her condition as “acute lumbosacral syndrome” and determined conservative treatment (diathermy, cortisone injections, pain medication and warm baths) was appropriate.
The next three exams were about the same except that plaintiff complained of increasing pain. Dr. Accardo continued to detect objective muscle spasm and on the last visit, August 18, referred her to a neurosurgeon, Dr. Raeburn Llewellyn. Dr. Accardo felt plaintiff might have a ruptured disc and said she could not return to work.
Dr. Llewellyn saw plaintiff on September 8, 1982 and she related complaints of low back and left leg pain with numbness. He found tenderness on the left side, objective muscle spasm affecting the muscle mass, limited motion on bending backwards, and decreased sensation in the left calf and foot. The doctor said she could not return to work and further evaluation was necessary.
Dr. Llewellyn saw plaintiff on February 16, April 13, and June 1, 1983 and did not record objective muscle spasm, but believed it was present. It was his opinion she had not improved and he was concerned there was disc injury. On June 1 he felt she should not return to work until she had a CAT scan and an EMG. Dr. Llewellyn was shown a negative CAT scan and EMG run on August 16, 1983 and stated: “These two tests essentially satisfy my concern ... her complaints and findings can be accepted medically as being those of residual and muscle ligament strains of her low back.” However, he said plaintiff could not have returned to work as of June 1, 1983 when he last saw her. On cross-examination he agreed a sprain diagnosis is generally made by an orthopedist, not a neurosurgeon, but he would not defer to an orthopedist on the need for physical therapy.
At the request of the employer, Dr. Richard Levy, neurosuregon, saw plaintiff on September 13, 1982 and reported the same complaints as the other physicians. ■ He detected no objective findings and noted subjective tenderness in the lumbar spine area. He stated there was no evidence of neurological disease and no reason plaintiff could not return to work. On August 8, 1983, Dr. Levy said her complaints were the same, but there were no objective findings and only subjective tenderness in the lower back. He ran a CAT scan and had a colleague, Dr. Boston, perform an EMG *1262 and- both tests were normal. He stated his impression was the same as in September, 1982: no clinical or lab evidence of a disc problem. He stated plaintiff could return to work and no further testing was warranted. On cross-examination he had no opinion as to whether she could return to work due to muscle or ligament problems, but noted on neither exam had he detected any muscle spasm.
Dr. Carl Culicchia, neurosurgeon, saw plaintiff on October 6, 1982 (3 months post-injury) at the request of the insurer. He stated the straight leg raising test was positive, but there was no evidence of neurological problems and felt plaintiff could resume full work activity. He thought she should remain under observation and if problems developed neurological testing would be in order. Dr. Culicchia said if spasm had been present he would not have suggested plaintiff return to work.
Plaintiff, stated she had daily headaches and once or twice a week pain and numbness in the lower back and legs. She testified that one week after the accident she attempted to return to work but left because of severe pain. Calvin Gerbitz, her roommate, corroborated plaintiffs testimony.
A compensation claimant who alleges disability due to substantial or appreciable pain must establish that condition to a reasonable certainty and by a fair preponderance of the evidence. Dusang v. Henry C. Beck Builders, Inc., 389 So.2d 367 (La.1980). A claimant is not disabled solely because of some residual pain or discomfort. Pain is disabling only if it is substantial. Culp v. Belden Corp., 432 So.2d 847 (La.1983). Whether a claimant has met this burden is a question of fact based on the totality of the lay and medical evidence. The trial court’s resolution has great weight and will not be disturbed absent manifest error.
Plaintiff urges we give greater weight to the testimony of the treating physicians, Drs. Accardo and Llewellyn. We note that Dr. Accardo last saw plaintiff on August 18, 1982 and the court found her disabled as of September 13, 1982. Dr. Llewellyn examined plaintiff four times over a nine month period, not the close attention normally given if he was her “treating” physician. There is no evidence of treatment by Dr. Llewellyn.
Generally, the treating physician’s opinion is accorded greater weight, but the trial judge must evaluate all the witnesses, lay and medical. Thereafter, he may accept or reject an opinion expressed by any of the medical experts depending upon how impressed he is with the expert’s qualifications, credibility and testimony. Irvine v. Sentry Ins. Co., 415 So.2d 467 (La.App. 1st Cir.1982).
Plaintiff’s alleged disability is the inability to work due to substantial pain. Degree of pain is a factual determination which depends to a great extent on the trial judge’s evaluation of plaintiff’s credibility. The trial judge considered testimony of six physicians as well as plaintiff and Mr. Ger-bitz. He rejected plaintiff’s testimony, thereby rejecting the opinion of Dr. Llewellyn which was based largely upon plaintiff’s subjective complaints, and basically accepted the testimony of Drs. Levy and Culicchia. While we may have reached a different result, considering the record as a whole, the evidence is sufficient to support the trial court’s much discretion that any disabling condition was resolved by September 13, 1982.
The record does not contain any evidence that further medical expenses were incurred.
Accordingly, no further penalties or attorney’s fees are due and the judgment of the district court is affirmed.
AFFIRMED.